J-S23021-26

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| KAREEM HOGAN | : | |
| | : | |
| Appellant | : | No. 2755 EDA 2025 |

Appeal from the PCRA Order Entered September 25, 2025
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s): CP-51-CR-0003016-2012

BEFORE: LAZARUS, P.J., MURRAY, J., and FORD ELLIOTT, P.J.E.[*]

MEMORANDUM BY MURRAY, J.:                    **FILED AUGUST 13, 2026**

Kareem Hogan (Appellant) appeals from the order dismissing his sixth petition for relief filed pursuant to the Post Conviction Relief Act (PCRA), 42 Pa.C.S.A. §§ 9541-9546. After careful review, we vacate the PCRA court's order, and remand for its consideration of Appellant's response to the court's Pa.R.Crim.P. 907 notice of its intent to dismiss Appellant's petition without a hearing.

On July 1, 2013, a jury convicted Appellant of third-degree murder, conspiracy to commit third-degree murder, and carrying a firearm on public

_____

[*] Retired Senior Judge assigned to the Superior Court.

streets in Philadelphia.[1]  The PCRA court[2] summarized the facts adduced at

trial:

> On October 27, 2011, at approximately 6:30 p.m., in response to a radio call, [Philadelphia] police officer Antonio Smith[ (Officer Smith)], upon arrival at Waterloo and Westmoreland Streets in Philadelphia, saw the decedent, Joel Negron [(Negron),] lying on the sidewalk of Westmoreland Street. [] Officer Smith examined [Negron's] injuries, noting multiple bullet wounds.  [O]fficer [Smith] did not observe a weapon on or about [Negron's] body. Within minutes[,] an ambulance arrived and took [Negron] to [Temple University H]ospital[, where he was pronounced dead].
>
> … D[octor] Edwin Lieberman, an Assistant Medical Examiner and an expert in forensic pathology, concluded that [Negron] died of [two] gunshot wounds to his back and [one to his] torso.  ….
>
> [O]fficer Robert Flade … recovered seven fired cartridge casings from the scene: five .25-caliber fired cartridge casings[,] and two .40-caliber fired cartridge casings.
>
> According to [] Officer Raymond Andrejczak, an expert in firearms identification, the five .25-caliber fired cartridge cas[ing]s recovered from the scene were fired from the same firearm.  The two .40-caliber fired cartridge casings were fired from a separate firearm.  The two projectiles recovered from [Negron's] body by the medical examiner's office were both .25-caliber and fired from the same firearm.
>
> … On November 25, 2011, Johnny Walker [(Walker)] gave a statement to police.  Walker explained that he was walking in the area of Front and Westmoreland Streets when he heard yelling and saw [Appellant] and Brandon Sanabria[ (Sanabria)]. [Negron] and a friend were walking from Waterloo and Westmoreland Streets toward Hope Street.  [Walker told police that Negron] said[,] "there's that bitch ass nigga right there." [Appellant] responded[,] "oh, he is pulling."  [Appellant] and

---

[1] 18 Pa.C.S.A. §§ 2502(c), 903(c), 6108.

[2] The Honorable Barbara A. McDermott presided over Appellant's trial and subsequent PCRA proceedings.

Sanabria pulled out their guns and starting shooting at [Negron]. [Negron] said[,] "that's all your bitch ass nigga got?" [Negron] walked to Waterloo and Westmoreland Street[s] and then fell on the sidewalk.

The day after the murder, Sanabria showed Walker a silver gun and asked if [Walker] wanted to buy it. Walker refused. Walker also told the police that he always saw [Appellant] carrying a black .40-caliber firearm on his hip. At trial, Walker recanted [his statement to police].

….

On November 27, 2011, Edwin Laboy [(Laboy)] gave a statement to police. Laboy stated that on the night of the murder[,] when it was just starting to get dark, Laboy ran into [Negron] near Westmoreland and Waterloo Streets. As [Laboy] was talking to [Negron, Appellant] and Sanabria approached []. Laboy started to walk away and heard four or five gunshots. Laboy saw [Appellant] and Sanabria run away. Laboy explained that [Appellant] and his friends had been selling PCP on the block and wanted rent money from [Yaniz] Estrada, who was working with [Appellant's stepfather (Fredrick) Miller[),] and [Appellant].

At trial, Laboy confirmed that he had seen [Negron] near Westmoreland and Waterloo Streets shortly before [Negron] was murdered, but [Laboy] testified that he was on a different street when he heard [approximately] four or five gunshots. ….

PCRA Court Opinion, 9/25/25, at 2-5 (citation, internal brackets, and some paragraph breaks omitted; some capitalization modified). The PCRA court noted that several additional civilian witnesses "gave testimony that was inconsistent with the statements they gave to police." *Id.* at 3 (citation omitted); *see also id.* at 3-4 (comparing witnesses' police statements with their conflicting trial testimony).

After the jury convicted Appellant of the above-mentioned offenses, on August 27, 2013, the trial court sentenced Appellant to an aggregate 26 to 52

years in prison. This Court previously outlined the ensuing procedural history, as follows:

> [Appellant] appealed and on April 13, 2015, this Court affirmed his judgment of sentence. On September 15, 2015, the Supreme Court of Pennsylvania denied [Appellant's] petition for allowance of appeal.
>
> On November 10, 2015, [Appellant] filed a timely *pro se* PCRA petition, his first. On March 2, 2017, the PCRA court dismissed the petition. On November 28, 2017, this Court affirmed the order of the PCRA court. On December 12, 2017, [Appellant, represented by counsel,] filed a second [] petition, which the PCRA court dismissed on March 29, 2018. On April 20, 2018, [Appellant] filed a notice of appeal. On September 6, 2018, during the pendency of the appeal of his second PCRA petition before this Court, [Appellant] filed a premature, subsequent *pro se* [PCRA] petition, his third overall. On September 17, 2018, the PCRA court received notice of the subsequent petition, and on September 18, 2018, the court issued a notice of intent to dismiss pursuant to Pa.R.A.P. 907. In the interim, on October 4, 2018, this Court dismissed the appeal of [Appellant's] second PCRA for [his] failure to file [an appellate] brief[]. On October 25, 2018, the PCRA court dismissed [Appellant's] third petition. On November 21, 2018, [Appellant] filed his fourth PCRA petition, which the PCRA court dismissed on January 17, 2019.

***Commonwealth v. Hogan***, 266 A.3d 623, 601 EDA 2021 (Pa. Super. 2021) (unpublished memorandum at 5) (internal brackets omitted) (quoting PCRA Court Opinion, 2/25/21, at 1-2).

On April 1, 2019, Appellant, *pro se*, filed his fifth PCRA petition. Appellant alleged the Commonwealth withheld evidence of Philadelphia Police Detective Phillip Nordo's (Detective Nordo) misconduct in unrelated homicide cases. PCRA Petition, 4/1/19, at 3-4. On February 25, 2021, the PCRA court dismissed Appellant's fifth PCRA petition without a hearing. Appellant timely

appealed. We affirmed the PCRA court's dismissal order, and the Pennsylvania Supreme Court denied allowance of appeal. *Hogan*, 266 A.3d 623 (unpublished memorandum at 12), *appeal denied*, 276 A.3d 199 (Pa. 2022).

On August 5, 2025, Appellant, *pro se*, filed the instant PCRA petition, his sixth. Therein, Appellant averred, in pertinent part, that in August 2024, the Commonwealth provided to Appellant "*Brady*/*Giglio* disclosure[s]"[3] (misconduct disclosures) concerning Detective Ohmarr Jenkins (Detective Jenkins) and Detective Nathaniel Williams (Detective Williams). PCRA Petition, 8/5/25, at 3.[4] Appellant claimed that the Commonwealth "withheld

_____

[3] *See Giglio v. U.S.*, 405 U.S. 150 (1972); *Brady v. Maryland*, 373 U.S. 83 (1963).

[4] In his petition, Appellant did not detail how he received the misconduct disclosures or the content of the misconduct disclosures. Appellant attached to his petition, without explanation, hundreds of pages of various documents, which he labeled as Exhibits 1 and 2 (collectively, Attachments). *See generally* PCRA Petition, 8/5/25, Attachments. The Attachments include, *inter alia*, court transcripts, pleadings, and grand jury presentments from unrelated cases. *See id.*

The documents in Exhibit 1 contain purported evidence of Detective Jenkins's misconduct, and the documents in Exhibit 2 contain purported evidence of Detective Williams's misconduct. *See generally id.* Included within Exhibit 1 is the Commonwealth's response to Curtis Kingwood's (Kingwood) PCRA petition (at docket number CP-51-CR-0002620-2013), wherein the Commonwealth conceded that Detective Jenkins testified falsely under oath. *See id.*, Exhibit 1. Included within Exhibit 2 is a Philadelphia Police Department Internal Affairs Division memorandum (IAD memorandum), provided to other PCRA petitioners in unrelated cases, which detailed substantiated claims that Detective Williams had previously (1) released confidential information, (2) abused his authority, (3) misused City
*(Footnote Continued Next Page)*

material exculpatory evidence in violation of **Brady**[.]" **Id.** Appellant vaguely claimed that Detectives Jenkins and Williams "committed misconduct when taking witness statements[,] and testified falsely under oath." **Id.** at 4. According to Appellant, "[h]ad [the misconduct disclosures] been provided … at the time of [Appellant's] trial[,] there is a reasonable probability that [he] would not have been convicted." **Id.**

On August 28, 2025, the PCRA court issued Rule 907 notice (Rule 907 Notice) of its intent to dismiss Appellant's sixth PCRA petition without a hearing, and afforded Appellant 20 days to file a response. Rule 907 Notice, 8/28/25, at 1 (unpaginated). The PCRA court advised Appellant that although his claims (premised upon the information within the August 2024 misconduct disclosures) satisfied the newly-discovered facts exception to the PCRA's jurisdictional time-bar,[5] they lacked merit. **Id.** at 3.

_____

of Philadelphia equipment, and (4) lied during the course of a departmental investigation. **See id.**, Exhibit 2.

[5] A PCRA petition, "including a second or subsequent petition, shall be filed within one year of the date the judgment becomes final, unless the petition alleges and proves" one of three enumerated exceptions. 42 Pa.C.S.A. § 9545(b)(1); **see also id.** § 9545(b)(3) ("a judgment becomes final at the conclusion of direct review … or at the expiration of time for seeking the review"). One such exception is the newly-discovered fact exception, which requires a petitioner to plead and prove that "the facts upon which the claim is predicated were unknown to the petitioner and could not have been ascertained by the exercise of due diligence[.]" **Id.** § 9545(b)(1)(ii). Instantly, it is undisputed that Appellant's sixth PCRA petition is facially untimely.

- 6 -

In its Rule 907 Notice, citing the IAD memorandum, the PCRA court observed that Detective Williams's misconduct did not occur "until more than four years after [Appellant's] June 2013 trial[.]" *Id.* The PCRA court explained that the "only evidence of [Detective Williams's] misconduct that [Appellant] provide[d] is not favorable to [Appellant], as the misconduct committed by Det[ective] Williams is unrelated to his casework as a homicide detective[.]" *Id.* The PCRA court further opined that Appellant failed to establish that the evidence of Detective Jenkins's misconduct, which the court gleaned from Exhibit 1, was relevant to Appellant's case. *Id.* at 4.

On September 17, 2025, Appellant filed a timely response to the Rule 907 Notice (Response), in which he offered arguments and factual averments not contained in his PCRA petition.[6] Appellant requested that the PCRA court "re[]consider its ruling in light of additional information that [Appellant] was unable to present in his initial *pro*[ ]*se* filing." Response, 9/17/25, at 3. Appellant argued that Detectives Jenkins and Williams took statements from witnesses "that were central to the Commonwealth's case …." *Id.* Appellant claimed that "the suppressed evidence" supported Appellant's argument that Detectives Nordo, Jenkins, and Williams coerced inculpatory civilian witness statements. *Id.* at 4.

---

[6] Appellant noted that his response "was prepared with the assistance of [his] federal *habeas* counsel." Response, 9/17/25, at 1. The Federal Community Defender Office represents Appellant in the instant appeal.

Regarding Detective Williams, Appellant averred that the Commonwealth disclosed[7] the IAD memorandum to Appellant's *habeas* counsel (apparently in connection with Appellant's parallel federal post-conviction litigation). *Id.* at 5. Appellant averred that Detective Williams's misconduct, described in the IAD memorandum, resulted in the Commonwealth charging Detective Williams with various criminal offenses. *Id.*[8] Appellant claimed that the IAD memorandum led him to discover that Detective Williams "has also been implicated in using improper investigative techniques" in an investigation that led to Ronald Thomas's (Thomas) murder conviction. *Id.* (citing **Commonwealth v. Thomas**, 237 A.3d 1030 (Pa. Super. 2020) (unpublished memorandum at 24-25) (remanding for the trial court to conduct a hearing on Thomas's after-discovered evidence and **Brady** claims, related to misconduct committed by Detectives Nordo and Williams in unrelated cases, which the Commonwealth disclosed to Thomas following his conviction)).

_____

[7] In his Response, Appellant appears to have identified the entirety of the Attachments as the misconduct disclosures that the Commonwealth provided to Appellant in August 2024. **See** Response, 9/17/25, at 5 (citing Detective Williams's misconduct disclosure as Exhibit 2), 8 (citing Detective Jenkins's misconduct disclosure as Exhibit 1).

[8] Our review of the docket for **Commonwealth v. Williams**, at CP-51-CR-0005875-2025, discloses that Detective Williams entered a guilty plea to aiding consummation of a crime, **see** 18 Pa.C.S.A. § 5107, on January 14, 2026.

Pertinently, Appellant averred that had he "been provided with an opportunity to supplement his *pro se* PCRA[ petition], he would have been able to establish that both the timing and nature of [Detective Williams's] misconduct amount[ed] to a ***Brady*** violation." ***Id.***

Regarding Detective Jenkins, Appellant alleged that the Commonwealth's misconduct disclosure "detail[ed] prior instances of misconduct relevant to [Detective] Jenkins'[s] involvement as an investigator in [Appellant's] case[,]" including Detective Jenkins's purported misconduct in Kingwood's homicide case. ***Id.*** at 7. According to Appellant, "[e]vidence of [Detective] Jenkins's misconduct is favorable to [Appellant,] as [it] would have cast further doubt on the police investigation and the integrity of the statements" of various trial witnesses. ***Id.*** at 9.

Appellant argued that the "statements taken by [Detective] Jenkins made up a substantial portion of the evidence against [Appellant,]" and if Appellant "had access to the evidence of [Detective] Jenkins's misconduct, he could have [] challenged the investigation and raised doubt sufficient to secure an acquittal." ***Id.*** Appellant further argued that although Detective Jenkins's false testimony in Kingwood's case occurred after Appellant's trial, the Commonwealth's disclosure obligation under ***Brady*** extended through the conclusion of Appellant's direct appeal. ***Id.*** at 7-8 (citing ***Fields v. Wharrie***, 672 F.3d 505, 515 (7th Cir. 2021)).

On September 25, 2025, the PCRA court entered an order dismissing Appellant's sixth PCRA petition. The order was accompanied by an opinion, which set forth an analysis substantially similar to the rationale the PCRA court had previously outlined in its Rule 907 Notice. *See* PCRA Court Opinion, 9/25/25, at 8-11; Rule 907 Notice, 9/17/25, at 3-4. Significantly, in its opinion, the PCRA court stated that Appellant "**did not respond to** [**the PCRA court's Rule**] **907 Notice**." *Id.* at 2 (emphasis added).

Appellant timely filed a notice of appeal. The PCRA court did not order Appellant to file a Pa.R.A.P. 1925(b) concise statement. The PCRA court complied with Rule 1925(a) by submitting to this Court its September 25, 2025, opinion.

Appellant raises the following two issues:

1. Did the PCRA court err in concluding that the after-discovered evidence of Detective Williams'[s] pattern and practice of misconduct was not suppressed by the Commonwealth and was not material under *Brady* …?

2. Did the PCRA court err in concluding that the after-discovered evidence of Detective Jenkins'[s] pattern and practice of misconduct was not suppressed by the Commonwealth and was not material under *Brady* …?

Appellant's Brief at 4.[9]

Preliminarily, we address the Commonwealth's argument on appeal that the PCRA court's dismissal order should be vacated, and the matter should be

_____

[9] In his brief, Appellant reiterates the arguments he set forth in his Response. *See generally* Appellant's Brief.

- 10 -

remanded for the court to consider Appellant's Response to the Rule 907 notice. **See** Commonwealth Brief at 11. Under the unique circumstances of this case, and after careful review of the record, we agree. [10, 11]

In its brief, the Commonwealth points out that because the PCRA court did not grant Appellant leave to file an amended PCRA petition, Appellant has only preserved for appeal those claims and arguments set forth in his initial, August 5, 2025, petition. **Id.** at 13-14 (citing **Commonwealth v. Washington**, 927 A.2d 586, 601 (Pa. 2007) ("Any claim not raised in the

_____

[10] In considering the Commonwealth's position, we are mindful of our Supreme Court's recent decision in **Commonwealth v. Brown**, ___ A.3d ___, 2026 WL 1737056, *1 (Pa. filed June 16, 2026) (concluding, *inter alia*, the Philadelphia District Attorney's Office "conceded relief although none was warranted based on the existing record" in that case). Here, as we explain below, our careful review of the record confirms that the PCRA court did not consider Appellant's Response, and that remand for that purpose is appropriate and warranted.

[11] It is well established that a PCRA petition's timeliness implicates the jurisdiction of both the PCRA court and this Court. **Commonwealth v. Ballance**, 203 A.3d 1027, 1031 (Pa. Super. 2019). Although in the instant case, the PCRA court determined that Appellant satisfied the newly-discovered facts exception to the PCRA's time-bar, our Supreme Court has stated that reviewing courts need not defer to a PCRA court's conclusion that the newly-discovered facts exception applies to claims presented in a PCRA petition. **See Commonwealth v. Rivera**, 324 A.3d 452, 467 (Pa. 2024) (holding the PCRA court erred by accepting the parties' agreement that the petitioner satisfied the newly-discovered facts exception, and noting that the "court's jurisdictional analysis was conclusory."). Here, we begin by addressing the PCRA court's failure to consider Appellant's Response. The PCRA court's failure to decide whether to permit Appellant to plead additional facts impacts our timeliness analysis. **See**, **e.g.**, **Commonwealth v. Anderson**, 234 A.3d 735, 738 (Pa. Super. 2020) (explaining that a petitioner must plead and prove an exception to the PCRA's jurisdictional time-bar).

- 11 -

PCRA petition is waived and not cognizable on appeal.")). The Commonwealth argues that although Appellant included the arguments he raises on appeal in his Response, Appellant's Response was "not itself an amended or serial PCRA petition." *Id.* at 14 (ellipses and brackets omitted; quoting ***Commonwealth v. Miranda***, 317 A.3d 1070, 1076 (Pa. Super. 2024)). The Commonwealth claims that since Appellant "argues in this appeal a version of his ***Brady*** and after-discovered evidence claims that he did not argue in his *pro se* petition, and since he was not granted leave to file an amended petition …, this Court should decline to reach the arguments he now advances." ***Id.*** at 15.

Rather than affirm the PCRA court's dismissal order on this basis, however, the Commonwealth requests that we remand the matter for the PCRA court "to decide if it will grant or deny [Appellant] leave to amend his petition." ***Id.*** at 16. In support of its argument, the Commonwealth relies on our Supreme Court's decision in ***Commonwealth v. Crispell***, 193 A.3d 919 (Pa. 2018).

In ***Crispell***, the appellant sought leave to amend his timely-filed PCRA petition (motion to amend) to include a ***Brady*** claim. ***Id.*** at 927. The PCRA court denied Appellant's motion to amend on a legally erroneous jurisdictional basis. ***Id.*** While the ***Crispell*** Court determined that the merits of the appellant's ***Brady*** claim were not preserved for appellate review in view of the PCRA court's denial of the appellant's motion to amend, it agreed with the appellant that the PCRA court's jurisdictional analysis was flawed. ***Id.*** at 929.

Because the PCRA court denied the appellant's motion to amend based "upon its mistaken belief that it lacked jurisdiction to address the claim in any event[,]" the PCRA court "exercised no discretion in addressing" the motion. *Id.* at 930. The *Crispell* Court concluded that the "only option available to this Court, … is to remand this case back to the PCRA court, so that the court may consider [the appellant's] motion for leave to amend in accord with the liberal standard of [Pa.R.Crim.P.] 905(A)[ (Amendment and withdrawal of PCRA petitions)]." *Id.* (citation omitted).

The Commonwealth argues that though *Crispell* is factually distinguishable, it is analogous to the instant case insofar as "the PCRA court did not *decide* to deny leave to amend; it simply did not grant such leave based on its misperception of the circumstances." Commonwealth Brief at 17 (emphasis in original).

In evaluating the Commonwealth's arguments, we are guided by the following legal principles.

Pennsylvania Rule of Criminal Procedure 905 provides that the PCRA court "may grant leave to amend or withdraw a [PCRA] petition … at any time. Amendment shall be freely allowed to achieve substantial justice." Pa.R.Crim.P. 905(A). *But see Commonwealth v. Mason*, 130 A.3d 601, 621 n.19 (Pa. 2015) ("Rule 905 amendments are not 'self-authorizing' such that a petitioner may simply 'amend' a pending petition with a supplemental pleading." (citation omitted)). When a PCRA petition "is defective as originally

- 13 -

filed, the judge shall order amendment of the petition, indicate the nature of the defects, and specify the time within which an amended petition shall be filed." *Id.* 905(B); *see also id.*, Cmt. (explaining that "'[d]efective,' as used in paragraph (B), is intended to include petitions that … lack particularity; … appear to be patently frivolous; … [and] do not allege facts that would support relief …."). Pursuant to Rule 905, "PCRA courts are invested with discretion to permit the amendment of a pending, timely-filed [PCRA] petition[.]" *Crispell*, 193 A.3d at 930 (citation omitted).

Rule 907 permits a court to dismiss a PCRA petition without a hearing, where its review of the petition satisfies the court that there are no genuine issues of material fact and that no relief is due. Pa.R.Crim.P. 907(1). Before dismissing a petition pursuant to Rule 907, the PCRA court must "give notice to the parties of the intention to dismiss the petition and shall state in the notice the reasons for the dismissal. The defendant may respond to the proposed dismissal within 20 days of the date of the notice." *Id.*

We have explained that

[t]he purpose of a Rule 907 pre-dismissal notice is **to allow a petitioner an opportunity to seek leave to amend his petition** and correct any material defects, the ultimate goal being to permit merits review by the PCRA court of potentially arguable claims. The response to the Rule 907 notice is an opportunity for a petitioner and/or his counsel to object to the dismissal and alert the PCRA court of a perceived error, **permitting the court to discern the potential for amendment**.

*Miranda*, 317 A.3d at 1076 (citation omitted; emphasis added). However, "the response is not itself a petition, and the law still requires leave of court to submit an amended petition." *Id.* (brackets and citation omitted).

Instantly, we agree with the Commonwealth that Appellant has waived for appellate review the arguments he propounds in his appellate brief, to the extent that they are premised upon the "additional information that [Appellant] was unable to present in his initial" PCRA petition, but which he set forth in his timely-filed Response. Response, 9/17/25, at 3; *see also* Appellant's Brief at 29-40.

As noted above, Appellant did not identify or discuss any discrete facts in his sixth, *pro se* PCRA petition, aside from his vague reference to the misconduct disclosures. Although Appellant attached voluminous documentation to his petition, he failed to relate the Attachments to his stated claims. *See Commonwealth v. Beshore*, 916 A.2d 1128, 1140 (Pa. Super. 2007) (*en banc*) (appellate courts will not develop an argument for the appellant or scour the record to find evidence to support an argument). Because the PCRA court did not grant Appellant leave to amend his petition, the additional facts, proffers, clarifications, and arguments Appellant supplied in his Response (and which largely form the basis of Appellant's arguments on appeal) are not preserved for our review. *See Miranda*, 317 A.3d at 1076; *see also Commonwealth v. Lambert*, 797 A.2d 232, 241 (Pa. 2001)

("Issues not raised before the [PCRA] court are waived and cannot be raised for the first time on appeal." (quoting Pa.R.A.P. 302(a)).

Nevertheless, because the record discloses that the PCRA court was unaware that Appellant had timely filed his Response to the court's Rule 907 Notice, we agree with the Commonwealth that the prudent course of action is to vacate the PCRA court's dismissal order, and remand the case for the PCRA court to consider Appellant's Response and to determine, in the first instance, whether to permit Appellant to file an amended PCRA petition. **See** Pa.R.A.P. 905(A); **Crispell**, 193 A.3d at 930. The PCRA court's mistaken belief that Appellant had not filed his Response effectively denied Appellant his right to respond under Rule 907(1), and deprived the PCRA court of the opportunity to "discern the potential for amendment." **Miranda**, 317 A.3d at 1076.[12]

Order vacated. Case remanded with instructions consistent with this memorandum. Jurisdiction relinquished.

_____

[12] We observe that while a "PCRA court's compliance with Rule 907 is mandatory[,]" "an appellant's failure to challenge the absence of a Rule 907 notice constitutes waiver." **Commonwealth v. Wooden**, 215 A.3d 997, 1001 (Pa. Super. 2019) (citation omitted); **see also** Pa.R.A.P. 302(a) ("Issues not raised in the trial court are waived and cannot be raised for the first time on appeal."). On appeal, Appellant does not request that we remand the case for the PCRA court to consider its Response. **See generally** Appellant's Brief. In its brief, however, the Commonwealth states that, "[t]o the extent that [Appellant] has waived any entitlement that he has to a remand …, owing to his failure to expressly seek leave to amend his petition, th[is] Court is advised that the Commonwealth waives any such objection." Commonwealth Brief at 19 n.10 (citing Pa.R.A.P. 105(a) ("[A]n appellate court may … disregard the requirements or provisions of any of these rules in a particular case on application of a party or on its own motion ….")).

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary


Date: 8/13/2026